IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TONY MINH LE,<br><br>Defendant. | No. 1:19-cr-57 (LO) |

**RESPONSE OF THE UNITED STATES TO
DEFENDANT'S RENEWED MOTION FOR RELEASE**

The United States of America, by and through its attorneys, G. Zachary Terwilliger, United States Attorney for the Eastern District of Virginia, and, James L. Trump and Carina Cuellar, Assistant United States Attorneys, hereby responds in opposition to the defendant's *Motion to Set Bond – Temporary Release to Home Confinement To Protect Health and Safety of Defendant and Community* (Dkt. 374), filed May 5, 2020.

**1.  Procedural Status**

The defendant was indicted in this case on August 29, 2019 (Dkt. 81).  He was arrested on October 30, 2019, in Garden Grove, California, and had his initial appearance before a Magistrate Judge in the Central District of California on October 31, 2019 (Dkt. 208).  The Magistrate Judge entered an Order of Detention Pending Trial, finding that the defendant had not introduced sufficient evidence to rebut the statutory presumption under 18 U.S.C. § 3142(e)(3) (Dkt. 208) that detention was appropriate.  The defendant waived an identity hearing, and the Magistrate Judge ordered him removed to this district. (Dkt. 208).

2. **Factors Justifying Detention**

The United States believes that there are no conditions, or combination of conditions, that will reasonably assure the appearance of the defendant and the safety of the community. The government submits that the Court should consider the following in determining whether to grant the defendant's motion and order the defendant released (and we are prepared to offer testimony as to these facts should the Court conduct a hearing on the defendant's motion):

- The defendant has been indicted under 21 U.S.C. § 846 for violations of §§ 841, 856, 859, 860, 861, and 863. It is a presumption case under 18 U.S.C. § 3142, and, if convicted, the defendant faces a mandatory minimum sentence of 10 years. The defendant would not be safety valve eligible if convicted.

- The defendant was the co-leader of the Reccless Tigers with his co-defendant, Richard Pak. For about 8 years, he was a leader of the gang and also its primary connection to the Asian Boyz, a Los Angeles, California, street gang with whom the Reccless Tigers were associated.

- The defendant invested $200,000 in the gang's marijuana grow operation near Hayfork, California. He was planning on expanding the grow operation in July 2019, but the farm was raided by the FBI and shut down.

- Shortly before his arrest on October 31, 2019, the defendant was spotted at a café in Garden Grove by an FBI agent. He was with another defendant, Soung Park, and another individual. When local law enforcement arrived to arrest the defendant, he fled on foot but was subsequently apprehended.

- The defendant was involved in a gang fight at the Block in Annandale, Virginia (a food court), on April 16, 2017. The fight was captured, in part, on security video, and the defendant is seen on the video. The gang fight at the Block was the day after another gang incident involving the Reccless Tigers and a rival gang, ADF, at a concert in Annandale, in which the defendant was also involved.

- The defendant was the host of a week-end-long Reccless Tiger party in Herndon, Virginia, on April 22-23, 2016. He was observed at the party wearing his signature Versace robe. Members of the Asian Boyz from California were also in attendance. On the second day of the party, a fight erupted between a gang member and a guest. Other gang members joined in, and, in the ensuing brawl, the guest was stabbed. He left the party with friends but died several hours later at his home from internal bleeding.

- The defendant was known to possess firearms, and he apparently liked small revolvers (*e.g.*, .38 caliber handguns). The defendant also directed numerous fire-bombings in Northern Virginia. These fire-bombings primarily targeted persons who owed money to the gang for drugs. If charged and convicted of one of these fire-bombings under 18 U.S.C. § 924(c), the defendant would be subject to a consecutive sentence of 30 years for using a "destructive device" during and in relation to a drug trafficking crime.

- Following the murder of Brandon White on February 1, 2019, the defendant directed other gang members to destroy evidence linking the gang, and, particularly, his brother and co-defendant, Peter Le, to White's murder.

3. **The 18 U.S.C. § 3142 (g) Factors**

The factors delineated in 18 U.S.C. § 3142 (g) support the continued detention of the defendant.

- The nature and circumstances of the offense. The defendant has been charged with a serious drug offense for which a lengthy prison sentence could be imposed if he is found guilty, including a mandatory minimum sentence of 10 years. The defendant may also be charged with additional offenses under 18 U.S.C. § 924(c) for the possession of firearms in furtherance of drug trafficking, which carry consecutive statutory penalties of at least five years imprisonment and up to 30 years imprisonment for a destructive device, and under § 1962(d) for engaging in a racketeering conspiracy.

- The weight of the evidence. The government is prepared to call numerous cooperating witnesses, including defendants who have already pled guilty to the charges contained in the Third Superseding Indictment, to testify to the facts outlined above. In addition, the government has evidence from social media postings and other sources of the defendant, for example, posing with other gang members and displaying gang signs.

- History and characteristics of the defendant. As noted, the defendant is a high-level member of a violent gang and has been involved in numerous acts of violence. He has recent and strong family ties to California, where he and several other defendants in this case have been arrested. He has had no known lawful employment as an adult.

- The Danger to the Community Posed by the Defendant's Release. The defendant's past gang activities demonstrate a clear danger to the community should he be released. Facing the possibility of a 40-year statutory sentence and sentencing guidelines of life, coupled with his California gang ties, he is also a risk of non-appearance should he be released.

**4.     New Information**

The defendant's plea for release is based on the unproven premise that he is at greater risk of contracting the COVID-19 virus in jail than he would be at home and the need to protect the defendant from the virus. Even if it were true that he is at greater risk of becoming ill in jail, that fact would not negate the overwhelming evidence that the defendant is a risk to the safety of the community and a risk of flight if released under any conditions. Moreover, this argument has repeatedly been rejected by judges in this and other districts. *See, e.g., United States v. Lewis*, No. 1:20-cr-06 (RDA) (E.D. Va. Alexandria Division, March 26, 2020) (holding that concern over contracting COVID-19 by defendant, facing a mandatory minimum sentence of 5 years imprisonment and suffering from congestive heart failure and hypertension, does not rebut presumption in favor of pre-trial detention); *United States v. Brownson*, No. 4:19-cr-47 (E.D. Va., Newport News Division, April 6, 2020) (holding by the district court on review of detention order that the "purported 'change in [Defendant's] circumstances' with respect to the coronavirus pandemic does not alter the Court's evaluation of the factors under § 3142(g). Speculation or concern about whether a defendant might contract an illness in pretrial detention falls short of compelling release."); *United States v. Johnson*, 1:20-cr-34 (TSE) (E.D. Va. Alexandria Division, March 25, 2020) (holding that the pandemic is not an exceptional reason to release defendant following a guilty plea, citing recent cases); *United States v. Jones*, 1:19-cr-306 (LMB) (E.D. Va. Alexandria Division, April 16, 2020) (finding that, given the safety measures undertaken at the Alexandria Detention Center, it is not clear the defendant would be safer if released following his guilty plea, notwithstanding his underlying serious health issues); *United States v. Sanders*, 1:20-mj-114 (JFA/LMB) (E.D. Va. Alexandria Division, April 2, 2020) (on appeal from magistrate judge's detention order, district court holds that the possibility of

becoming infected with the coronavirus while detained pre-trial, despite serious health conditions, does not overcome the presumption in favor of detention); *United States v. Sungar*, No. 1:20-mj-103 (LO) (E.D. Va. Alexandria Division, April 7, 2020); and *United States v. Wilson*, 1:17-cr-222 (LO) (E.D. Va. Alexandria Division, April 9, 2020); see also Dkt. 379, order denying motion for release by defendant Sang Huynh.

The defendant is currently confined at the Alexandria Detention Center. That facility as undertaken rigorous procedures to protect inmates and staff from COVID-19 infection. *See* the attached Alexandria Sheriff's Office, COVID-19 Coronavirus Protocols, updated April 20, 2020. Those procedures appear to be working. To date, there have been no confirmed cases of the COVID-19 virus at ADC. We also note that these types of measures apparently have proved effective in eliminating outbreaks of the virus at other jails. The *Virginia Pilot* reported on May 17, 2020, that the Norfolk Sheriff's Office appears to have snuffed out an outbreak of the coronavirus in the city's jail. Fifty-five of the jail's roughly 1,000 inmates and deputies had tested positive for the virus during an expansive testing campaign by the Sheriff's Office, Virginia Department of Health and Sentara Healthcare. But the 45 inmates and 10 deputies who contracted the coronavirus have since recovered. Health officials allowed the once-infected deputies to return to work, and the inmates were moved out of the jail's "hot" zone. In other words, even if the defendant or other inmates or staff were to become infected while at ADC, the jail is capable of controlling the outbreak and treating those who would become ill.

The defendant also makes the dubious claim that he has a serious health condition that puts him at greater risk of serious illness should he become infected with the COVID-19 virus. He claims he suffers from allergies, asthma, and depression, but, notably, he does not provide any documentation or evidence of prior treatment or prescribed medications. The defendant is a

26 year-old male who appears to be in relatively good health. While moderate to severe asthma may put an individual at higher risk of getting sick from COVID-19, taking reasonable precautions should substantially reduce that risk (*i.e.*, avoid allergens that trigger asthma and continue to take any prescribed medication, such as inhalers). *See* Centers for Disease Control and Prevention, CDC Guidelines, Coronavirus Disease 2019 (COVID-19), People Who Need Extra Precautions (May 20, 2020).

## CONCLUSION

For the foregoing reasons, the United States requests that the Court deny the defendant's motion for release.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

Date: May 20, 2020         By:      /s/
                               James L. Trump
                               Carina Cuellar
                               Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of May, 2020, I caused the foregoing document to be served on all counsel of record through the Official Court Electronic Filing System.

                                              /s/
                                  James L. Trump
                                  Assistant United States Attorney
                                  United States Attorney's Office
                                  2100 Jamieson Avenue
                                  Alexandria, VA 22314
                                  703-299-3726
                                  jim.trump@usdoj.gov